## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

CHARLES A. MANN )
)
       Plaintiff, )
)
v. )    CIVIL ACTION NO. 2:06-CV-936-MHT
)
SOUTHERN HEALTH PARTNERS )
SERVICES, *et al.*, )
)
       Defendants. )

## DEFENDANTS' SPECIAL REPORT AND ANSWER

Defendants, Southern Health Partners, Inc. ("SHP") (incorrectly designated in the Complaint as "Southern Health Services and Southern Health Partners Services") and Tina Ellis, LPN., (designated in the Complaint as "Nurse Tina of Southern") submit their Special Report and Answer to the Court as follows:

## I.    INTRODUCTION

The plaintiff signed his Complaint on September 15, 2006 and filed same on October 16, 2006. On October 17, 2006, this Court ordered Defendants to file an Answer and Special Report concerning the factual allegations made by the plaintiff in his Complaint. Pursuant to paragraph one of the Order for Special Report, Defendants aver that there are no similar complaints against them that should be considered with this complaint.

## II.    PLAINTIFF'S ALLEGATIONS

The plaintiff alleges that these Defendants failed to provide adequate or appropriate medical attention in violation of the plaintiff's Eighth Amendment right to be free from cruel and unusual

punishment. Specifically, the plaintiff alleges that he was sexually assaulted by another inmate from September 7, 2006 to September 13, 2006. It appears that the only claim alleged against Tina Ellis, LPN ("Nurse Ellis") and SHP is for failure to treat the injuries the plaintiff claims he suffered from this alleged assault.[1]

### III.    DEFENDANTS' ANSWER TO PLAINTIFF'S ALLEGATIONS

Defendants deny the allegations made against them by the plaintiff as said allegations are untrue and completely without basis in law or fact. Defendants deny that they acted, or caused anyone to act, in such a manner as to deprive the plaintiff of any right to which he was entitled. The plaintiff's Complaint fails to state a claim upon which relief can be granted. Defendants raise the defenses of Eleventh Amendment immunity, qualified immunity, the plaintiff's failure to comply with the Prison Litigation Reform Act ("PLRA"), all defenses under the PLRA and additional defenses presented below. Defendants reserve the right to add additional defenses if any further pleading is required or allowed by the law.

### IV.    SWORN STATEMENTS

Pursuant to Paragraph two of the Court's Order, Defendants submit the affidavits of Nurse Ellis (Exhibit 1), Sandra Corson, LPN (Exhibit 2) and Kenneth Nichols, M.D. (Exhibit 3), who are persons having knowledge of the subject matter of the Complaint.

---

[1] This statement of the plaintiff's allegations is based upon the plaintiff's Complaint and the undersigned's interpretation of the issues raised. If other issues are presented, Defendant requests that this Honorable Court grant Defendants an opportunity to answer and address those issues.

## V.    STATEMENT OF FACTS

### A.    **Background**

1.    Kenneth Nichols, M.D. ("Dr. Nichols") obtained his medical degree from UAB in 1982. From 1982 to 1985, he performed an internal medicine internship and residency at Baptist Memorial Hospital in Memphis, Tennessee. From July 1985 to the present, he has been in private practice in internal medicine in Prattville, Alabama. He is licensed by the State of Alabama as a medical doctor and has been so since 1985. Since 1997, Dr. Nichols has been the medical director of the Autauga County Jail. Since November 2005, he has been employed by Southern Health Partners, Inc. ("SHP") to be the medical director of the Autauga County Jail. (Nichols Aff. at ¶ 2.)

2.    Nurse Ellis obtained her LPN degree from Bevill State Community College in Hamilton, Alabama in December 2005. In May 2006, she became licensed by the State of Alabama as an LPN. Since May 2006, she has been employed by Southern Health Partners, Inc. ("SHP") as the medical team administrator ("MTA") for the Autauga County Jail. (Ellis Aff. at ¶ 2.)

3.    Sandra Corson, LPN ("Nurse Corson") obtained her LPN degree from George Wallace Community College in Selma, Alabama in 1995. She was employed as an LPN by Baptist Medical Center and Vaughn Regional Hospital in Selma, Alabama for approximately three years. She next worked at Baptist Nursing Home in Prattville, Alabama for four years. From November 2002 through August 2006, she was employed as an LPN at the Dallas County Jail. Since August 2006, she has been employed by Southern Health Partners, Inc. ("SHP") as an LPN at the Autauga County Jail. (Corson Aff. at ¶ 2.)

4.    SHP provides medical care to inmates in various jail facilities, including the Autauga County Jail. From November 2005 to the present, health care services have been provided to

3

inmates by SHP pursuant to a contract between SHP and the Autauga County Commission. Health care in the jail is provided under the direction of a medical team administrator ("MTA") as well as a medical director. During the period complained of by the plaintiff in this action, Dr. Nichols was the medical director of the jail, and Nurse Ellis was the MTA. (Nichols Aff. at ¶ 3; Ellis Aff. at ¶ 3; Corson Aff. at ¶ 3.)

5.        When an inmate in the jail requires routine medical care, he or she obtains an inmate sick call slip from the corrections officer on duty in the housing unit and that form is provided to the medical staff for action. Routine sick calls are conducted by the medical staff inside the housing unit. (Nichols Aff. at ¶ 4; Ellis Aff. at ¶ 4; Corson Aff. at ¶ 4.)

### B.    Chronology of the plaintiff's treatment

6.        A true and correct copy of SHP's entire medical chart on the plaintiff is attached to Nurse Ellis' affidavit as Exhibit A. (Ellis Aff. at ¶ 6.)

7.        On August 22, 2006, the plaintiff was booked into the Autauga County Jail, having transferred from the Chilton County Jail. (Ellis Aff. at ¶ 7; Nichols Aff. at ¶ 7; Corson Aff. at ¶ 7.)

8.        On August 18, 2006, while incarcerated at the Chilton County Jail, the plaintiff completed an inmate sick call slip, complaining of a skin infection. On August 19, 2006, the plaintiff was seen by Marlo Oaks, RN, who noted that the plaintiff states he has a skin infection on his inner thigh and was seen by a skin specialist who told him it wasn't a rash but a skin infection and that he was put on medicine that his mother would bring for him. The plaintiff requested hydrocortisone cream to relieve the itching, and several packs were provided to him. The plaintiff also complained of left upper wisdom tooth pain. Nurse Oaks observed no signs or symptoms of

4

abscess and noted that the plaintiff would receive 800 mgs. of ibuprofen pursuant to Dr. Nichols's treatment protocol. (Ellis Aff. at ¶ 8; Nichols Aff. at ¶ 8; Corson Aff. at ¶ 8.)

9.      On August 19, 2006, Marlo Oaks, RN also performed a history and physical on the plaintiff. Nurse Oaks recorded that the plaintiff had tried to commit suicide twice in the last month and a half, once by attempting to hang himself and the other by jumping off a building. He denied any current suicidal thoughts. The plaintiff also gave a history of using cocaine twice a week. On physical examination, the plaintiff stated that he had a rash in between his legs, and he was using hydrocortisone cream for it. He complained of left side pain in his upper wisdom tooth, which Dr. Nichols had prescribed ibuprofen to treat.. (Ellis Aff. at ¶ 9; Nichols Aff. at ¶ 9; Corson Aff. at ¶ 9.)

10.      On August 29, 2006, the plaintiff completed an inmate sick call slip, wherein he complained of having pink eye. On the same day, Nurse Ellis saw the plaintiff and noted that the plaintiff's eye was pink, bloodshot and swollen. Nurse Ellis notified Dr. Nichols, who prescribed the plaintiff with Neomycin eye drops and ibuprofen for seven days. (Ellis Aff. at ¶ 10; Nichols Aff. at ¶ 10; Corson Aff. at ¶ 10.)

11.      On September 13, 2006, the plaintiff completed an inmate sick call slip, complaining that he had been raped, kicked several times, choked, hit in the back and that his anus was in pain. On September 18, 2006, the plaintiff was seen by Sandra Corson, LPN in response to these complaints. Nurse Corson noted a small knot on the plaintiff's head, which was not consistent with being kicked and she found no bruises or indications that the plaintiff had been kicked in the back. She also examined the plaintiff's posterior and anus and found no signs of forcible entry. She saw no bleeding, tears, swelling or redness. Nurse Corson found no physical evidence of rape and saw

5

no signs or symptoms of rape. Nurse Corson found no evidence of any physical injury suffered by the plaintiff. Pursuant to Dr. Nichols' treatment protocol, the plaintiff was prescribed ibuprofen 800 mg. twice a day for seven days to treat his complaints of pain. The plaintiff never again complained of any problems or pain arising out of his alleged rape and assault. (Ellis Aff. at ¶ 11; Nichols Aff. at ¶ 11; Corson Aff. at ¶ 11.)

12.    When the medical staff received the plaintiff's inmate sick call slip dated September 13, 2006, Nurse Ellis was informed by correction officers that the plaintiff had not been raped and that the plaintiff's allegations were false. In conferring with her supervisors, it was recommended to Nurse Ellis that the plaintiff be examined. As set out above, the plaintiff was examined by Sandra Corson on September 18, 2006 and no physical injuries were observed.   (Ellis Aff. at ¶ 12.)

13.    Prior to receiving the plaintiff's September 13, 2006 inmate sick call slip, Nurse Ellis and the medical staff had no notice or knowledge that the plaintiff had complained of being raped and/or assaulted in the jail. (Ellis Aff. at ¶ 13; Nichols Aff. at ¶ 12; Corson Aff. at ¶ 12.)

14.    Other than his September 13, 2006 inmate sick call slip, the plaintiff completed no further sick call slips regarding any medical complaints related to his alleged rape and/or assault. (Ellis Aff. at ¶ 14; Nichols Aff. at ¶ 13; Corson Aff. at ¶ 13.)

15.    On October 12, 2006, the plaintiff completed an inmate sick call slip, complaining of a sinus infection and an upset stomach. Later that day, Nurse Ellis saw the plaintiff and observed that the plaintiff had a swollen face, tenderness around his eyes and nose, runny nose, no fever and a sore throat.   In response to these symptoms, Dr. Nichols ordered that the plaintiff receive amoxicillin for 10 days, ibuprofen for three days and nasal spray to use as directed pursuant to Dr. Nichols's treatment protocol.   (Ellis Aff. at ¶ 15; Nichols Aff. at ¶ 14; Corson Aff. at ¶ 14.)

**C.**     **Defendants were not deliberately indifferent to the plaintiff's medical needs.**

16.     Based upon Nurse Ellis', Nurse Corson's and Dr. Nichols' review of the plaintiff's records, their treatment of the plaintiff and their education, training and experience, it is their medical opinion that the plaintiff received appropriate nursing care for his complaints of injury related to his alleged rape and assault. (Ellis Aff. at ¶ 16; Nichols Aff. at ¶ 15; Corson Aff. at ¶ 15.)

17.     All necessary care provided to the plaintiff by Nurse Ellis and the SHP medical staff was appropriate, timely and within the standard of care. (Ellis Aff. at ¶ 17; Nichols Aff. at ¶ 16; Corson Aff. at ¶ 16.)

18.     On no occasion was the plaintiff ever at risk of serious harm, nor was the medical staff ever indifferent to any complaint that he made. (Ellis Aff. at ¶ 18; Nichols Aff. at ¶ 17; Corson Aff. at ¶ 17.)

**VI.    LEGAL ARGUMENT**

**A.     The plaintiff's claims against Defendants are due to be dismissed, because the plaintiff has presented no evidence that Defendants were deliberately indifferent to a serious medical condition.**

In order to prevail under 42 U.S.C. § 1983 on his medical claim, the plaintiff must demonstrate that Defendants were deliberately indifferent to a serious medical condition. Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are "serious." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). "A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Kelley v. Hicks*, 400 F. 3d 1282, 1284

n. 3 (11th Cir. 2005). Where a prisoner has received medical attention and the dispute concerns the adequacy of the medical treatment, deliberate indifference is not shown. *Hamm v. DeKalb County*, 774 F.2d 1567 (11th Cir. 1985).

Indeed, in *Estelle v. Gamble*, 429 U.S. 97, 106 (1976), the United States Supreme Court held that medical malpractice does not become a constitutional violation merely because the victim is a prisoner. Thus, the inadvertent or negligent failure to provide adequate medical care "cannot be said to constitute an unnecessary and wanton infliction of pain." (*Id.* at 105-06.) Instead, it must be shown that there was a "deliberate indifference" to the serious medical needs of a prisoner. (*Id.* at 104.)

In addition, an inmate does not have a right to a ***specific*** kind of medical treatment. *City of Revere v. Massachusetts General Hosp.*, 463 U.S. 239, 246 (1983) (holding, "the injured detainee's constitutional right is to receive the needed medical treatment; ***how [a municipality] obtains such treatment is not a federal constitutional question***") (emphasis added). Furthermore, this Court should not substitute its medically untrained judgment for the professional judgment of the medical health professionals who treated the plaintiff. See *Waldrop v. Evans*, 871 F.2d 1030, 1035 (11th Cir. 1989) (observing that "when a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation"); *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985) (stating that the evidence showed the plaintiff received "significant" medical care while in jail, and although the plaintiff may have desired different modes of treatment, care provided by jail did not constitute deliberate indifference), cert. denied, 475 U.S. 1096 (1986); *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976) (stating "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second

8

guess medical judgments."); *Bismarck v. Lang,* 206 WL1119189 (M.D. Fla. 2006) ("Whether a defendant should have used additional or different diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment and therefore not an appropriate basis for liability under the Eighth Amendment.'") quoting *Adams v. Poag,* 61 F.3d 1537, 1545 (11th Cir. 1995).

In this case, there is absolutely no evidence from which a jury could find that Nurse Ellis or the SHP medical staff acted with deliberate indifference to any serious medical need of the plaintiff. On the contrary, the plaintiff's medical chart clearly demonstrates he was treated for his complaints of sexual assault by Nurse Corson on September 18, 2006. Based upon her examination, Nurse Corson found no physical evidence of rape and saw no signs or symptoms of rape. Indeed, she found no evidence of any physical injury suffered by the plaintiff. Pursuant to Dr. Nichols' treatment protocol, the plaintiff was prescribed ibuprofen 800 mg. twice a day for seven days to treat his complaints of pain, and he never again complained of any problems or pain arising out of his alleged rape and assault. (Ellis Aff. at ¶ 11; Nichols Aff. at ¶ 11; Corson Aff. at ¶ 11.)

Dr. Nichols, Nurse Ellis and Nurse Corson have all testified that the standard of care was met by Nurse Ellis and the SHP medical staff in their treatment of the plaintiff. The plaintiff has failed to present any evidence or medical testimony rebutting this testimony and, in fact, has presented no evidence that the treatment provided him by said Defendants was somehow indifferent to his needs.

**B.**    **SHP Is Due To Be Dismissed, Because There is No Evidence that SHP Itself Directly Caused the Violation of Any Constitutional Right Through Its Adoption of Some Official Policy or Practice.**

Precedent from the U.S. Court of Appeals for the Eleventh Circuit provides that when a private corporation contracts with a state to perform a function traditionally within the province of the state government, including the provision of medical services to state inmates, then that

corporation should be treated as a governmental entity and as a person acting under color of state law within the meaning of 42 U.S.C. §1983. *Buckner v. Toro*, 116 F.3d 450, 452 (11th Cir. 1997); *Edwards v. Alabama Department of Corrections*, 81 F.Supp.2d 1242, 1254 (M.D. Ala. 2000). Although the private entity operating under such circumstances is not entitled to qualified immunity, certain special requirements for liability apply. *Edwards*, 81 F.Supp.2d at 1254-55; *McDuffie v. Hopper*, 982 F.Supp. 817, 825 (M.D. Ala. 1997). Thus, in order to prove that SHP should be liable in this case, the plaintiff would have to demonstrate that SHP itself directly caused the violation of his constitutional rights through SHP's adoption of some official policy or practice. See, *e.g.*, *Monell v. Department of Social Services*, 436 U.S. 658, 695 (1978); *Gilmere v. City of Atlanta*, 774 F.2d 1495, 1502-03 (11th Cir. 1985). Plaintiff has failed to assert a specific allegation against SHP in his complaint, and a theory of *respondeat superior* is insufficient in any event to support a §1983 claim. Therefore, even the broad assertion that SHP was generally responsible for the acts or omissions of its medical staff would be inadequate to prove liability. For this reason, SHP is entitled to a full and final summary judgment. See, *Monell*, 436 U.S. at 691-92; *Edwards*, 81 F.Supp.2d at 1255.

**C.    The plaintiff's claims are barred by the Prison Litigation Reform Act for his failure to exhaust administrative remedies.**

The Prison Litigation Reform Act requires exhaustion of all available administrative remedies before an inmate may file a lawsuit under 42 U.S.C. § 1983. See 42 U.S.C. § 1997e(a); *Booth v. Churner*, 532 U.S. 731, 733-34 (2001) (stating that 42 U.S.C. § 1997e(a) "requires a prisoner to exhaust 'such administrative remedies as are available' before suing over prison conditions."). Exhaustion is required for "all inmate suits about prison life, whether they involve

general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532 (2002).

The plaintiff has not alleged that he pursued any grievance through the State Board of Adjustment or through the jail's grievance procedure. See *Brown v. Tombs,* 139 F.3d 1102, 1103-04 (6th Cir. 1998) (requiring prisoners to affirmatively show that they have exhausted administrative remedies). Alabama law provides the opportunity to file a claim and proceed before the Alabama State Board of Adjustment pursuant to Ala. Code § 41-9-60 et seq.

Because the plaintiff failed to exhaust all administrative remedies, the plaintiff's claims are barred by 42 U.S.C. § 1997e(a). See *Alexander v. Hawk,* 159 F.3d 1321, 1326-27 (11th Cir. 1998) (affirming dismissal of present action due to failure to exhaust administrative remedies)

## VII.    REQUEST THAT SPECIAL REPORT BE TREATED AS MOTION FOR SUMMARY JUDGMENT.

### A.    <u>Summary Judgment Standard</u>

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendants move this Court to enter summary judgment in their favor, because, as is more particularly shown above, there is no genuine issue as to any material fact and they are entitled to judgment as a matter of law.

On a motion for summary judgment, the court should view the evidence in a light most favorable to the nonmovant, However, a plaintiff "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). Only reasonable inferences with a foundation in the record inure to the nonmovant's benefit. See *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133 (2000).

11

"[T]he court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted or unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'" *Reeves,* 530 U.S. at 151, quoting 9A C. Wright & A. Miller, Federal Practice and Procedure § 2529, p. 299.  "A reviewing court need not 'swallow plaintiff's invective hook, line and sinker; bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like need not be credited.'" *Marsh v. Butler County,* 268 F.3d 1014, 1036 n.16 (11th Cir. 2001) (*en banc*) quoting *Massachusetts School of Law v. American Bar,* 142 F.3d 26, 40 (1st Cir. 1998).

**B.    Motion for Summary Judgment**

Defendants respectfully request that this honorable Court treat this Special Report as a motion for summary judgment and grant unto them the same.



_____
Daniel F. Beasley  (BEA059)
Robert N. Bailey, II  (BAI045)
Attorneys for Defendants


**OF COUNSEL:**
LANIER FORD SHAVER & PAYNE P.C.
200 West Side Square, Suite 5000
Huntsville, AL  35801
(256) 535-1100

CERTIFICATE OF SERVICE

I hereby certify that I have mailed by United States Mail, postage prepaid, the document to the following non-CM/ECF participant on this the 27th day of November, 2006:

John Mark Englehart
Beasley Allen Crown Methvin Portis & Miles PC
P.O. Box 4160
Montgomery, AL 35103-4160

John Robert Faulk
McDowell, Faulk & McDowell
145 West Main Street
Prattville, AL 36067-3033


_____
Of Counsel

[yr] \\LFSPSQL\CPShare\CPWin\HISTORY\061114_0001\17382.11

13

# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| CHARLES A. MANN | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:06-CV-936-MHT |
| | ) | |
| SOUTHERN HEALTH PARTNERS | ) | |
| SERVICES, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## AFFIDAVIT OF TINA ELLIS, LPN.

Before me, the undersigned notary public, in and for said County and State, personally appeared **Tina Ellis, LPN**, who, after first being duly sworn by me, deposes and states as follows:

1.      My name is Tina Ellis, LPN. I am over the age of 19 years and have personal knowledge of the facts contained herein.

2.      I obtained my LPN degree from Bevill State Community College in Hamilton, Alabama in December 2005. In May 2006, I became licensed by the State of Alabama as an LPN. Since May 2006, I have been employed by Southern Health Partners, Inc. ("SHP") as the medical team administrator ("MTA") for the Autauga County Jail.

3.      SHP provides medical care to inmates in various jail facilities, including the Autauga County Jail. Health care services have been provided to inmates by SHP pursuant to a contract between SHP and the Autauga County Commission. Health care in the jail is provided under the direction of an MTA as well as a medical director. During the period complained of by the plaintiff

in this action, Dr. Kenneth Nichols ("Dr. Nichols") was the medical director in the jail and I was the MTA.

4.      When an inmate in the jail requires routine medical care, he or she obtains an inmate sick call slip from the corrections officer on duty in the housing unit and that form is provided to the medical staff for action.  Routine sick calls are conducted by the medical staff inside the housing unit.

5.      As I understand the plaintiff's complaint, the plaintiff alleges that he was sexually assaulted by another inmate from September 7, 2006 to September 13, 2006.  It appears that the only claim alleged against me and SHP's medical staff is for failure to treat the injuries he claims he suffered from this alleged assault.

6.      I have reviewed SHP's entire medical chart on the plaintiff, a true and correct copy of which is attached as Exhibit A.

7.      On August 22, 2006, the plaintiff was booked into the Autauga County Jail, having transferred from the Chilton County Jail.

8.      On August 18, 2006, while incarcerated at the Chilton County Jail, the plaintiff completed an inmate sick call slip, complaining of a skin infection.  On August 19, 2006, the plaintiff was seen by Marlo Oaks, RN, who noted that the plaintiff states he has a skin infection on his inner thigh and was seen by a skin specialist who told him it wasn't a rash but a skin infection and that he was put on medicine that his mother would bring for him.  The plaintiff requested hydrocortisone cream to relieve the itching, and several packs were provided to him.  The plaintiff also complained of left upper wisdom tooth pain. Nurse Oaks observed no signs or symptoms of abscess and noted that the plaintiff would receive 800 mgs. of ibuprofen pursuant to Dr. Nichols's treatment protocol.

9.      On August 19, 2006, Marlo Oaks, RN also performed a history and physical on the plaintiff. Nurse Oaks recorded that the plaintiff had tried to commit suicide twice in the last month and a half, once by attempting to hang himself and the other by jumping off a building. He denied any current suicidal thoughts. The plaintiff also gave a history of using cocaine twice a week. On physical examination, the plaintiff stated that he had a rash in between his legs, and he was using hydrocortisone cream for it. He complained of left side pain in his upper wisdom tooth, which Dr. Nichols had prescribed ibuprofen to treat.

10.     On August 29, 2006, the plaintiff completed an inmate sick call slip, wherein he complained of having pink eye. On the same day, I saw the plaintiff and noted that the plaintiff's eye was pink, bloodshot and swollen. I notified Dr. Nichols, who prescribed the plaintiff with Neomycin eye drops and ibuprofen for seven days.

11.     On September 13, 2006, the plaintiff completed an inmate sick call slip, complaining that he had been raped, kicked several times, choked, hit in the back and that his anus was in pain. On September 18, 2006, the plaintiff was seen by Sandra Corson, LPN in response to these complaints. Nurse Corson noted a small knot on the plaintiff's head, which was not consistent with being kicked and she found no bruises or indications that the plaintiff had been kicked in the back. She also examined the plaintiff's posterior and anus and found no signs of forcible entry. She saw no bleeding, tears, swelling or redness. Nurse Corson found no physical evidence of rape and saw no signs or symptoms of rape. Based on Nurse Corson's note, she found no evidence of any physical injury suffered by the plaintiff. Pursuant to Dr. Nichols' treatment protocol, the plaintiff was prescribed ibuprofen 800 mg. twice a day for seven days to treat his complaints of pain. The plaintiff never again complained of any problems or pain arising out of his alleged rape and assault.

12.     When the medical staff received the plaintiff's inmate sick call slip dated September

13, 2006, I was informed by correction officers that the plaintiff had not been raped and that the plaintiff's allegations were false. In conferring with my supervisors, it was recommended that the plaintiff be examined. As set out above, the plaintiff was examined by Sandra Corson on September 18, 2006 and no physical injuries were observed.

13.     Prior to receiving the plaintiff's September 13, 2006 inmate sick call slip, I and the medical staff had no notice or knowledge that the plaintiff had complained of being raped and/or assaulted in the jail.

14.     Other than his September 13, 2006 inmate sick call slip, the plaintiff completed no further sick call slips regarding any medical complaints related to his alleged rape and/or assault.

15.     On October 12, 2006, the plaintiff completed an inmate sick call slip, complaining of a sinus infection and an upset stomach. Later that day, I saw the plaintiff and observed that the plaintiff had a swollen face, tenderness around his eyes and nose, runny nose, no fever and a sore throat. In response to these symptoms, Dr. Nichols ordered that the plaintiff receive amoxicillin for 10 days, ibuprofen for three days and nasal spray to use as directed pursuant to Dr. Nichols's treatment protocol.

16.     Based upon my review of the plaintiff's records, my treatment of the plaintiff and my education and training, it is my medical opinion that the plaintiff received appropriate nursing care for his complaints of injury related to his alleged rape and assault.

17.     All necessary care provided to the plaintiff by me and the SHP medical staff was appropriate, timely and within the standard of care.

18.     On no occasion was the plaintiff ever at risk of serious harm, nor was the medical staff ever indifferent to any complaint that he made.

_Tina Ellis, LPN_

Tina Ellis, LPN

STATE OF ALABAMA          )
                          )
COUNTY OF _Autauga_       )

    I, the undersigned Notary Public in and for said county in said state, hereby certify that Tina Ellis, LPN whose name is signed to the foregoing and who is known to me, acknowledged before me that, being fully informed of the contents of said instrument, she executed the same voluntarily on the day the same bears date.

    GIVEN UNDER MY HAND and official seal on this the 27 day of _Novel_ , 2006.

_Robert N. Bell_

Notary Public
My Commission Expires: _12-3-2007_

# EXHIBIT A

# TO

# AFFIDAVIT OF
# TINA ELLIS, LPN

EXHIBIT A

## Physician's Orders

Southern Health Partner's, Inc

Inmate Name: MANN, Charles
SS#: 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
DOB: 1-4-82
Allergies: ASA

Facility:
Autauga
County
Jail

| Date: 8-29-06 | Date: |
|---|---|
| Neomycin Eye Drops per tx protocol —— JE, MPA | |
| M.D. Sig: | M.D. Sig: |
| Date: Ibuprofen 800 mg B.D x 7 days per tx protocol JE/A | Date: |
| M.D. Sig: | M.D. Sig: |
| Date: 10/12/06  Amoxicillin 500 mg ī ī BID x 10 days + IBU Spray use as directed per | Date: BID x 10 days, Sudafed ī BID x 3 days, Nasal tx protocol —— JE, MPA |
| M.D. Sig: | M.D. Sig: |
| Date: | Date: |
| M.D. Sig: | M.D. Sig: |

## PROGRESS NOTES

| Last Name | First Name | Attending Physician | Room No. | Hosp. No. |
|---|---|---|---|---|
| Mann | Charles | Nichols | #6 | |

| Date | Notes Should Be Signed by Physician |
|---|---|
| 9/8/06 | Capt. Lamur brought I/M to office c/o rape and being kicked in back and head. I found a small knot in head but not consistant c being kicked. He also stated that down the middle of his back hurt found no bruises or indications that he had been kicked. I gave him ibuprofen 800mg bid x 7 days for c/o pain S. C. RN |
| 9/8/06 | Nates checked him and found no signs of forcable entry. No bleeding, no tears, no swelling or redness ——— RN |
| 9/8/06 | I/M kept inserting that he had been raped but found no evidence or S/S of rape when I checked him ——— S. Carson LPN |

Dr. _____

Signature _____

PROGRESS NOTES

Form 65   BRIGGS, Des Moines, Iowa 50306
PRINTED IN U.S.A.

## Slip

I, _Mann, Charles_ (inmate name)
have been issued _Nasal Spray_
_____, (item/s issued) from Southern Health
Partners, at _Autauga_ County Jail, on _10/12/06_ (date).

X _Charles Mann_                    _Sgt W J Smith_
**Inmate Signature**                **Witness Signature**

_Je, MTA_
**Nurse Signature**

Southern Health Partners
Revised: 02/05/04 J.C.

## Item/s Issued
## Slip

I, _Charles Mann_ (inmate name)
have been issued _Neomycin Eye drops_
_____, (item/s issued) from Southern Health
Partners, at _Autauga_ County Jail, on _8-29-06_ (date).

X _Charles Mann_                    _Scott Ross_
**Inmate Signature**                **Witness Signature**

_Je, MTA_
**Nurse Signature**

Southern Health Partners
Revised: 02/05/04 J.C.



**SOUTHERN HEALTH PARTNERS**

# INMATE SICK CALL SLIP – MEDICAL REQUEST

***TO BE COMPLETED BY INMATE:*** Please complete the top half of the Sick Call Slip and return it to the correctional officer and/or medical staff for submission and review by the medical staff. The medical staff will arrange for you to be seen by the appropriate medical staff member. You will be charged in accordance with the medical co-pay system at this facility.

Today's Date: 10/12/06   Pod/Location: 6   Cell: 604   ID#: _____

Inmate's Full Name: Charles Mann

Complaint/Problem: May have Sinus inffection, my nose Ran Run's yellow and burn's, short of Breath, sinus pressure, Headach, throat burn's, stomach upset got sick about 9 times Lastnight Jand nose is also stopup.

How long have you had this problem? Lastnight

Inmate's Signature: Charles Mann   Date: 10/12/06

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

# TO BE COMPLETED BY MEDICAL STAFF:

Note Patient's Vital Signs:   Temp 98.1   Resp 16   Pulse 71   B/P 142/88

Instructions/Assessment: Document your findings, inmate's responses/actions I/m has a swelln face, tenderness around eyes + nose, runny nose, no fever, sore throat. See MD orders.

_____

_____

☑ Received Orders – thru Treatment Protocols; via telephone order; via verbal order
☐ Follow-Up Required? If checked, date to be seen again _____
☐ Chronic Condition
☑ Inmate to be charged through medical co-pay for this visit

Date Seen by Medical: 10/12/06   Seen by: JE, MTA

*Place original form in patient's medical record.*

 **SOUTHERN HEALTH PARTNERS**

# INMATE SICK CALL SLIP – MEDICAL REQUEST

***TO BE COMPLETED BY INMATE:*** Please complete the top half of the Sick Call and return it to the correctional officer and/or medical staff for submission and review by the medical staff. The medical staff will arrange for you to be seen by the appropriate medical staff member. You will be charged in accordance with the medical co-pay system at this facility.

Today's Date: 9/13/06  Pod/Location: 6 Pod  Cell: 603  ID#

Inmate's Full Name: Charles Mann A Jr / 9/13/06 3:30pm

Complaint/Problem: I have been Raped and enforced a Deathly threat, I have been kicked several time, I've been chocked Down And I've been Hit in the Back and kicked And I need a Doctor

How long have you had this problem? And my bottwhole hurts

Inmate's Signature: Charles Mann Jr    Date: 9/13/06

Corporate does have perp to look at him.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

# TO BE COMPLETED BY MEDICAL STAFF:

Note Patient's Vital Signs:  Temp 96⁷  Resp 20  Pulse 87  B/P 130/87

Instructions/Assessment:  Document your findings, Inmate's responses/actions

See MD orders

☐ Received Orders – thru Treatment Protocols; via telephone order; via verbal order
☐ Follow-Up Required?  If checked, date to be seen again
☐ Chronic Condition
☑ Inmate to be charged through medical co-pay for this visit

Date Seen by Medical: 9/18/06    Seen by: S. Carson LPN

*Place original form in patient's medical record.*



**SOUTHERN HEALTH PARTNERS**

# INMATE SICK CALL SLIP – MEDICAL REQUEST

**TO BE COMPLETED BY INMATE:** Please complete the top half of the Sick Call Slip and return it to the correctional officer and/or medical staff for submission and review by the medical staff. The medical staff will arrange for you to be seen by the appropriate medical staff member. You will be charged in accordance with the medical co-pay system at this facility.

Today's Date: 08/29/06  Pod/Location: 7    Cell: 705    ID# 36681

Inmate's Full Name: Charles A. Mann

Complaint/Problem: May have pink eye can't hardly open my eye's, can't go to sleep cause it hurts so bad please see me.

How long have you had this problem? Seen's yesterday

Inmate's Signature: Charles Mann    Date: 08/29/06

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## TO BE COMPLETED BY MEDICAL STAFF:

Note Patient's Vital Signs:    Temp 97.6  Resp 18  Pulse 61  B/P 134/84

Instructions/Assessment: Document your findings, inmate's responses/actions I/m's eye is pink – blood shot looking, swollen w/ pus mattering up eye. I/m states it hurts to open it. See MD orders

☑ Received Orders – thru Treatment Protocols; via telephone order; via verbal order
☐ Follow-Up Required? If checked, date to be seen again _____
☐ Chronic Condition
☑ Inmate to be charged through medical co-pay for this visit

Date Seen by Medical: 8-29-06  Seen by: ƏE, MTA

*Place original form in patient's medical record.*

# SPECIAL DIET ORDER

NAME: _Charles Mann_     DATE START: _8-24-06_

CELL#: _7POD_   PHYSICIAN: _K. Nichols_   DATE STOP: _Until Released_

- ☐ Diabetic
- ☐ Low Salt
- ☐ Liquids
- ☐ No Fried Foods
- ☐ Low Cholesterol
- ☐ No Salt
- ☐ Clear Liquids
- ☑ Allergic: _Onions_
- ☐ Vegetarian
- ☐ Soft Foods
- ☐ High Fiber
- ☐ Other:

OFFICER: _A Lemon_     DATE: _8-24-06_

| | N | | | | N | _no wheezing today_ |
|---|---|---|---|---|---|---|
| Finger Recent Inj. | N | | Respirations Cough/Sputum | | | |
| Head: Glasses Pupils Sclera Conjunctiva Vision | N | | Heart: Auscultation Radial pulses Apical pulse Rhythm | | N | |
| Ears: Appearance Canals Hearing | N | | Extremities: Pulses Edema Joints | | N | |
| Mouth: Teeth/Gums Dentures Plates Throat Tongue Tonsils | N | _C/o of (R) side Pain upper wisdom tooth - Ibu 800 mg T BID x 7 days w Dr. Nichols_ | Abdomen: Shape Palpation Hernia Bowel Sounds | | N | |
| Nose | N | | Spine | | N | |
| Neck: Veins Mobility Thyroid Carotids Lymph nodes | N | | Genital/Urinary System | | N | _States has Rash inbetwe legs - Hydrocortisine cream + KOP given Mother to bring med for this from Home_ |

## LABORATORY TESTS

| | Date & Initial | Results |
|---|---|---|
| Was PPD planted and read timely? | 8-19-06 M.O | |
| VDRL / RPR | | |
| Other Lab Tests needed: | | |
| Pregnancy Test? | | |

## MENTAL HEALTH OBSERVATION

| | N | A/Comment |
|---|---|---|
| Orientation (person, place, time) | N | |
| General appearance (motor behavior, mannerisms | N | |
| Affect (mood) | N | |
| Content of thought, history of suicide, present thoughts of suicide | N | _Denies suicide thoughts. I'm in Holding Cell waiting M.H. evalua_ |

Physical Examiner's Signature: _Marla Oaks RN_    Date: _8-19-06_

Physician's Signature: _ME_    Date: _8/21/06_

Southern Health Partners, Inc.

# ADMISSION DATA / HISTORY AND PHYSICAL FORM

Exam Date: 8-19-06          S.S.#: 418 15 8387          ID#: _____

Inmate Name: Mann, Charles
                (Last)        (First)          (Middle)

Alias: _____          Date Booked: _____
        (Last)  (First)  (Middle)

Address: 1055 Ala St.    Prattville, AL          County: Chilton
          (Street)        (City)    (State)  (Zip)

Telephone: No phone    Birthdate: 1-4-87          Religion: Baptist
                                    (State)

Education Completed: 12          Special Education: _____

Marital Status: S  M  W  D  Separated      Read/Write English: YES  NO  Other: _____

Previous Incarcerations: (Facility/Date) Chilton Co Jail, Autauga County

## MEDICAL HISTORY

Notify in Emergency: Patricia Whitmore          Mom
                        (Name)                (Relationship)

Address: _____  Prattville, AL          Phone: 334 358-7116
          (Street)    (City)    (State)  (Zip)

Health Insurance: Medicaid
                    (Type of Insurance)

Family Physician: Dr K. Nichols    Prattville, AL
                    (Name)          (Street Address)    (City)  (State)  (Zip)  (Policy Number)  (Phone Number)

Past Hospitalizations (include surgeries): none

Head Injury with Loss of Consciousness: _____  Last Tetanus: _____  Immunization: _____
          (Location)        (Street Address)        (City)        (State)  (Zip)

Allergies: Nyquil, Benadryl, Onions

Current Medication(s): None

## MENTAL HEALTH EVALUATION

Hospitalization for Mental Health Reasons: YES  NO  If Yes, Why: Mental Health / Tenets
                                                                    ADHD

Where: Unkown Facility          When: 3 mo ago
        (Location)  (Street Address)  (City)  (State)      (Date)

Psychotropic Meds (Specify type and last dose): Dilantin, Depakote, Zoloft
                                                        (Type/Dosage)  (Date)

Prior Counseling/Out-Patient Treatment for: Mental Health Counseling

Where: Chilton Shelby Mental Health          When: age 7-15 yrs
        (Location)  (Street Address)  (City)  (State)          (Date)

Have you ever attempted suicide? Yes  How: Hang, jump off Building  When: 1½ mo ago
                                                                            (Date)

Have you recently considered committing suicide? N/O

Do people consider you a violent person? NO

Have you ever been arrested for a violent crime/sexual offense? (Specify) NO  Park 9 3 days

Street drugs: Cocaine 2x/wk  couple yrs  Smoker: HTD  Etoh: none
                (Type-Quantity)  (How Often)  (How Long)  (Pk/day)  (Date)

Inmate's Signature: _____          Date: _____

Interviewer's Signature: M. Oaks          Date: 8/19/06

Withess: (if physical is refused): _____          Date _____

# MEDICAL HISTORY & PHYSICAL ASSESSMENT

| Problems | Yes | No | Problems | Yes | No | Problems | Yes | No |
|---|---|---|---|---|---|---|---|---|
| Vision | | | Hypertension | | | Gonorrhea | | |
| Hearing | | | Anemia | | | Syphilis | | |
| Balance/Dizziness | | | Blood | | | Muscle Problem | | |
| Blackouts | | | Stomach Pain | | | Joint Problem | | |
| DT's | | | Heartburn | | | Arthritis | | |
| Headaches | | | Ulcer | | | Other | | |
| Seizures | X | Does not | Nausea/Vomiting | | | Other | | |
| Nervous Disorder | | | Gall Bladder | | | Regular Menstrual Period | | |
| Throat | | | Liver | | | Irregular Menstrual Period | | |
| Teeth | | | Hepatitis | | | # of days Menstrual Period | N/A | |
| Asthma | X | | Diabetes | | | LMP | | |
| Hay Fever | | | Kidney Disease | | | Gravida/Para | | |
| Pneumonia | | | Bladder Infection | | | Last Pap | N/A | |
| Tuberculosis | | | Trouble Voiding | | | Contraception | | |
| Heart | | | Pediculi (lice) | | | Other | | |

EXAM:   Age 24   Sex M   Race W   Ht. 5'11"   Wt. 207

Pulse 71   BP 130/78   Temp. 97'   Resp. 20

| Area/Type | N | A/Comment | Area/Type | N | A/Comment |
|---|---|---|---|---|---|
| Skin: Color, Condition, Turgor, Recent Inj. | ✓ | | Chest (Breasts): Configuration, Auscultation, Respirations, Cough/Sputum | | Has Singulair Inhaler @ Home. Mother to bring @ wheezing today |
| Head: Glasses, Pupils, Sclera, Conjunctiva, Vision | ✓ | | Heart: Auscultation, Radial pulses, Apical pulse, Rhythm | ✓ | |
| Ears: Appearance, Canals, Hearing | ✓ | | Extremities: Pulses, Edema, Joints | ✓ | |
| Mouth: Teeth/Gums, Dentures, Plates, Throat, Tongue, Tonsils | ✓ | Clc of ® side Pain upper wisdom tooth - Ibu 800 mg = BID x 7 days w Dr. Nichols | Abdomen: Shape, Palpation, Hernia, Bowel Sounds | ✓ | |
| Nose | N | | Spine | N | |
| Neck: Veins, Mobility, Thyroid, Carotids, Lymph, nodes | ✓ | | Genital/Urinary System | N | States has Rash inbetween legs. Hydrocortisone cream ↑ cop given. Mother to bring med for this from Home |

## LABORATORY TESTS

| | Date & Initial | Results |
|---|---|---|
| Was PPD planted and read timely? | 8-19-06 M.O | |
| VDRL / RPR | | |
| Other Lab Tests needed: | | |
| Pregnancy Test? | | |

## MENTAL HEALTH OBSERVATION

| | N | A/Comment |
|---|---|---|
| Orientation (person, place, time) | ✓ | |
| General appearance (motor behavior, mannerisms | ✓ | |
| Affect (mood) | ✓ | |
| Content of thought, history of suicide, present thoughts of suicide | ✓ | Denies suicide thoughts. I/m in Holding cell waiting on t/ cuffs |

Physical Examiner's Signature: _Marla Cato RN_   Date: 8-19-06

Physician's Signature: _____   Date: 8/21/06

Copy — original given to kitchen 8/8/06 — OMO

# SPECIAL DIET ORDER

NAME: Mann, Charles _____ DATE START: 8-8-06 _____

CELL#: E4 _____ PHYSICIAN: K. Nichols _____ DATE STOP: Till released _____

☐ Diabetic          ☐ Low Cholesterol       ☐ Vegetarian
☐ Low Salt          ☐ No Salt               ☐ Soft Foods
☐ Liquids           ☐ Clear Liquids         ☐ High Fiber
☐ No Fried Foods    ☒ Allergic: Onions
☐ Other: _____

~~OFFICER~~ Nurse: Megwane _____ DATE: 8-8-06



**SOUTHERN HEALTH PARTNERS**

# INMATE SICK CALL SLIP – MEDICAL REQUEST

*TO BE COMPLETED BY INMATE:* Please complete the top half of the Sick Call Slip and return it to the correctional officer and/or medical staff for submission and review by the medical staff. The medical staff will arrange for you to be seen by the appropriate medical staff member. You will be charged in accordance with the medical co-pay system at this facility.

Today's Date: 8/15/06  Pod/Location: Holding 1  Cell: _____  ID#: _____

Inmate's Full Name: Charles Mann

Complaint/Problem: infection Drug by growing skin infection
_____
_____

How long have you had this problem? Years

Inmate's Signature: Charles Mann    Date: 08/15/06

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## TO BE COMPLETED BY MEDICAL STAFF:

Note Patient's Vital Signs:    Temp 97°    Resp 20    Pulse 71    B/P 130/78

Instructions/Assessment: Document your findings, inmate's responses/actions States has skin infecti-
on inner thighs. Was seen by a skin specialist who told
him it wasn't a rash but a skin infection, and he was
put on a Medicine. I/m states Mother Patricia Whitmore
to bring in this med. Requests Hydrocortisone cream to
relieve itching - Several packs to top given. Also c/o of Ⓛ
upper wisdom tooth pain. no s/s Abscess. Ibu 600mg + Bio x 7da
per tx protocol.

☐ Received Orders – thru Treatment Protocols; via telephone order; via verbal order
☐ Follow-Up Required? If checked, date to be seen again _____
☐ Chronic Condition
☐ Inmate to be charged through medical co-pay for this visit

Date Seen by Medical: 8/19/06    Seen by: M. Oaks RN

*Place original form in patient's medical record.*

## Mental Health Board of Chilton and Shelby Counties, Inc.



POST OFFICE DRAWER 689
CALERA, ALABAMA 35040
FAX (205) 685-0900

### NO SUICIDE CONTRACT

1.  Since I feel that things are hopeless in my life and I think that I have nothing to live for I agree to this contract. There is a difference between <u>thinking</u> about suicide to escape from life's problems and truly <u>wanting</u> to die. Few people really want to die. But many people want to escape from the problems. Some of these people kill themselves before they seek help from others and <u>before</u> they try every way possible to solve their dilemma.

2.  Though others may often need help, I realize <u>no one can really stop me from committing suicide</u> if I am determined to kill myself. Just being admitted to a hospital is no final solution. <u>I am ultimately responsible for that decision and for <u>my own life.</u></u>

3.  I have come to the Mental Health Center because I want help.

4.  I agree to reconsider suicide. It can be <u>postponed.</u> I agree not to try to hurt my body in any way or commit suicide in the next _30_ days. If I again become worried about committing suicide I will...............
    a...Call the Emergency crisis line at 755-5933
    b. Visit or call the Mental Health Center during regular office hours, 8:00 to 4:30, or go to the hospital Emergency Room if the Mental Health Center is closed.

5.  I can renew this contract every_30_days, so that I do not have to kill myself. I realize that <u>I am a valuable person</u> and I agree to <u>seek help.</u>

6.  This contract is only as valid as <u>my promise to myself</u> and to others that I will not commit suicide or harm myself in any way. I will carry a copy of this NO SUICIDE CONTRACT on my person at all times.

_8-19-06_
DATE

_8-19-06_
DATE

_____
SIGNATURE

_____
SIGNATURE OF WITNESS

**CLANTON**
(205) 755-5933

**CLANTON (SA)**
(205) 755-5985

**PELHAM**
(205) 663-1252

**PELHAM (SA)**
(205) 685-9535

# MEDICATION ADMINISTRATION RECORD

| MEDICATIONS | HOUR | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

IBU 800 mg
ї BID x 7 days

*am* / *pm* handwritten entries in the grid (illegible markings)

REORDER FROM INTEGRAL SOLUTIONS GROUP • 1-800-235-0767

FORM A-55    STOCK #506423

CHARTING FOR 10/1/06    THROUGH 10/31/06

Physician: Nichols

Alt. Physician:

Telephone No.:

Alt. Telephone:

Medical Record No.:

Allergies: ASA

Rehabilitative Potential:

Diagnosis:

Medicaid Number:

Medicare Number:

Approved By Doctor:

By:

Title:

Date:

RESIDENT: Mann, Charles

D.O.B.: 1-4-82

Sex: M

Room:

Patient Code:

Admission Date:

# MEDICATION ADMINISTRATION RECORD

OS/1 PHARMACY SYSTEM FORM AO3-MIO

| MEDICATIONS | HOUR | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Amoxicillin 500 mg BID x 10 days 10/12/06 | am | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | pm | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Sudafed ÷ BID x 10 days 10/12/06 | am | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | pm | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| IBU 800 mg ÷ BID x 3 days 10/12/06 | am | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | pm | | | | | | | | | | | | | | D/C | | | | | | | | | | | | | | | | | |
| Nasal Spray K.O.P. 10/12/06 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| IBU 800 mg ÷ BID Continue 10/15/06 | am | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | pm | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |

CHARTING FOR 10-12-06    THROUGH 10-31-06

PHYSICIAN Nichols

ALT. PHY.

ALLERGIES NKA

TELEPHONE NO.

ALT. TELEPHONE

REHABILITATIVE POTENTIAL

MED. RECORD NO.

ADMISSION DATE

MEDICAID NUMBER    MEDICARE NUMBER    COMPLETE ENTRIES CHECKED BY:    TITLE:

PATIENT Mann, Charles    SEX M    DATE OF BIRTH    PATIENT CODE    ROOM NO. 6 POD    BED FACILITY CODE

# MEDICATION ADMINISTRATION RECORD

QS/ 1 PHARMACY SYSTEM FORM A03-MIO

| MEDICATIONS | HOUR | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Ilbuprofen 800mg + Bid x 7 days 11/18/06 | Am | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | PM | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |

CHARTING FOR **9/1/06** THROUGH **9/30/06**

| | | | |
|---|---|---|---|
| HYSICIAN | | TELEPHONE NO. | MED. RECORD NO. |
| ALT. PHY. | | ALT. TELEPHONE | |
| LI  IES **ASA** | | REHABILITATIVE POTENTIAL | |
| IAGNOSIS | | | ADMISSION DATE |
| MEDICAID NUMBER | MEDICARE NUMBER | COMPLETE ENTRIES CHECKED BY: | TITLE: |

| PATIENT | SEX | DATE OF BIRTH | PATIENT CODE | ROOM NO. | BED | FACILITY CODE |
|---|---|---|---|---|---|---|
| *Mann Charles* | M | 1/4/82 | | #6 Pod. | | |

OID

File

*Southern Health Partners*

# MASTER PROBLEM LIST

For Use with Chronic Condition Patients. Chronic Conditions are classified as (but not limited to): Diabetes (IDDM/NIDDM), Hypertension, Pregnancy, HIV/AIDS, Asthma, Seizures, Diagnosed Mental Illness, CHF, Hepatitis.

Patient's Name (Last/First/Middle): **Mann, Charles**

ID#: **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** DOB: **1-4-82** Sex: **M** Intake Date/s: **3/8/06**

| Date Problem Identified/Dx | Chronic Condition | M.D. Comments | Date Of Initial M.D. Eval | M.D. Initials |
|---|---|---|---|---|
| 3/17/06 | Mental Health | | | N |
| | Asthma | | | N |
| | Seizures | | | N |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

H & P Date: **3/17/06**   Allergies: **ASA**

PPD Test Date: **3/17/06**   PPD Results Date: **3/19/06**   PPD Results: **0** mm

Facility Name: **Autauga Metro Jail**

Revised: 02/8/04 JC

3/30/04                pt c/o Rash

Broke out in an itching rash ~ 2 days ago

OB:        scattered papular red rash
           r/t Booz back, forearms, lower
           legs.

A: to scabies

Plan →    Kwell lotion.

HANN Charles                                    Kenneth Nichols, M.D.

DATE:

9/17/02                B/P  144/82

Having now pain in testicle. Hurts all the
time. Unable to sleep 2° pain. Also
burns real bad when he pees.

Saw Dr. @ St. Clair some lost time & he
didn't do anything for it.

PE:        @ ° epididymitis @ testicle —

A: 1. scrotal mass  2. dysuria

Plan → refer to R Newman.

                Levaquin 500 daily × 14 days × 2
Samples Zyprexa 5mg 1 qAM

10/2/03                B/P  120/84
He saw a doctor in B'ham since he was here
last. Has some bleeding from it. Back in
jail for 3 wks.

PE:        bleeding scrotum          no urls

A: 1. scrotal mass

Plan → Keflex 500 qid too qd 0

2-12-03  Rite Aid - Prattville
         Dilantin 100 neg.

5-7-02                          B/P  128/80

Has been back in jail for about weeks.
Is not sleeping since he's been in jail.
Was on Zyprexa, Depakote, & Zoloft also
also on singulair.

PE:
                lungs - clear

A: 1. asthma.
   2. insomnia
Plan → Trazodone        ☓ 100
                        ½ tab @
                        ☓ 8 PM
                        for sleep.

7/12/02                     B/P   124/82
Had a rash on testicle 1½ wks ago. Has gone
pain in testicle. Had some bleed from penis

PE: ↑ enlarged epididymis @        Trazodone✓✓
        testicle - s. tender

A: 1. epididymitis
Plan → Doxy 100 bid X 10 d.

PROGRESS NOTES                    Kenneth Nichols, M.D.

| DATE | | | |
|---|---|---|---|
| 8/23/01 | B/P 120/82 | 1940 W° | NKDA |

Has been hav clest pains. Was given some
Benadryl this Am.          He passed out 2
times yesterday — was laying down + got
up + head + felt lt spinn + had a presyncopal
episode x 2.          Can't keep ds food down
desther.          Stays Nauseated + vomits. No
diar hea.          Feels like s mud of deadly
stabbn him in the lft side of his chest.
Gets it off + on!          Can just be laying
there + it will hrt.

PMH:

medical — Nore trouble
          c/s Pms                         singular c̄
                                          zyprex q 5 y
                                          q to m
gurgy — None

Sti: Non-smoke                          No H

P/e:          wdwd w° n/A/d

RBENT — neg
Nick — c̄ t ruls
lungt — clear
C/r — RRR s̄ @ m ŋ
Abd — sl. tests byregs tum —

A: 1. Gastroenteritis
    2. costPms

Plan → prevacid 30 30 cples x 2 wks.

          zyprex d5 cples x q wd.



**SOUTHERN HEALTH PARTNERS**

# INMATE SICK CALL SLIP – MEDICAL REQUEST

*TO BE COMPLETED BY INMATE:* Please complete the top half of the Sick Call Slip and return it to the correctional officer and/or medical staff for submission and review by the medical staff. The medical staff will arrange for you to be seen by the appropriate medical staff member. You will be charged in accordance with the medical co-pay system at this facility.

Today's Date: 03/16/06    Pod/Location: 8    Cell: 808    ID#_____

Inmate's Full Name: Charles Mann

Complaint/Problem: The Bottom of Both of my feet is cracking and Bleeding I can't hardly sleep on /walk on even wear shoe's please see me.

How long have you had this problem? about 6 mo.

Inmate's Signature: Charles Mann    Date: 03/16/06

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

# TO BE COMPLETED BY MEDICAL STAFF:

Note Patient's Vital Signs:    Temp_____    Resp_____    Pulse_____    B/P_____

Instructions/Assessment: Document your findings, Inmate's responses/actions_____

_____ Work    release-

_____

_____

_____

Received Orders – thru Treatment Protocols; via telephone order; via verbal order
Follow-Up Required? If checked, date to be seen again_____
Chronic Condition
Inmate to be charged through medical co-pay for this visit

Seen by Medical:_____    Seen by:_____

*original form in patient's medical record.*



**SOUTHERN HEALTH PARTNERS**

## AUTHORIZATION FOR RELEASE OF MEDICAL INFORMATION TO CORRECTIONAL FACILITY

To: ___DR. Nichols.___

I hereby authorize any hospital, clinic, physician's office, and/or health agency to provide any information they may have acquired while attending me for a medical, dental, or psychiatric problem to Southern Health Partners, Inc. who is the medical care provider of this Correctional Facility.  Such information may include the following items:

       Summary of positive findings, most recent history, physical exam including any diagnostic tests;
       Medical/dental/psychiatric/psychological diagnosis and treatment regimen when last treated;
       Drug or ETOH treatment records;
       Hospital discharge summary for any/all hospitalization(s);  Laboratory and/or Special Study Reports;
       Any other medical/dental/psychiatric services I may have previously had, currently seeking, or
       future treatment plans;
       Other Records: __Medication  Records, meds Currently on.__

_OK._

This consent is subject to revocation at any time except to the extent SHP has already taken action in reliance on it.  If not previously revoked, this consent will terminate within 120 days of the inmate's signature below.

I understand my records are protected under state and/or federal privacy laws and cannot be disclosed to any other outside party without my written consent unless otherwise provided by state or federal law.  Records received will be kept within the patient's medical file within the correctional medical unit and be used in the on-going provision of health care services.

I release responsibility and/or liability from the correctional facility for the release of the above requested medical file information to the medical unit to the extent indicated and authorized.

**Please send requested documents**        ATTN: MEDICAL UNIT/SOUTHERN HEALTH PARTNERS
**to the following address:**        County Name: _Autauga  Metro._
       Street Address: _136  North  Court  St._
       City/State/Zip: _Prt, Al  36067._ Phone/Fax: _358-4827._

Patient Name: _Charles,  Mann._                    Birth Date: _____

Social Security Number: _418 - 15 - 8387_ Dates of Service(s): _____

Inmate's Signature: _Charles mann_                    Date: _3/8/06._
Witness: _A. Holla  LPN_                    Date: _3/8/06._

Final Privacy Rule (page 82540, HIPAA) states while individuals are in a correctional facility or in the lawful custody of a law enforcement official, covered entities (i.e. jail medical units) can use, request or disclose protected health information about these individuals without authorization to the correctional facility having custody as necessary for: the provision of health care to such individuals; for the health and safety of such individuals and other inmates; and the health and safety of the officers of employees of or other as the correctional institution.  Covered entities are allowed to disclose protected health information about these individuals if the correctional institution represents that the protected health information is necessary for these purposes.

TB Consent Form

# Tuberculosis Screening and Treatment

## What is Tuberculosis:

Tuberculosis ("TB") is a serious, infectious (transmitted through the air) disease that most commonly affects the lungs. In the lungs, the bacteria destroys elastic lung tissues and is replaced with fibrous connective tissues. The general symptoms of active TB are often subtle, unnoticeable and may include: Fatigue; Weight Loss; Fever; Chills; and Night Sweats. Symptoms of TB in the lungs may include: a persistent cough; chest pain; and coughing up blood. Although TB is preventable and can be cured with proper medication, 5% to 10% of those with active TB will die from the disease. This is usually due to patients not taking their medications correctly or improper drug treatment. TB is usually diagnosed through the use of the Mantoux tuberculin skin test. In this test, a dose of purified protein derived from the Tubercle bacilli, which is non-infectious, is injected into the upper layer of skin on the inside of the forearm. Forty-eight to 72 hours after the injection, the test site is examined. In most cases a hardened area of tissue 10 millimeters or larger is considered an indication of infection with TB, but it is not necessarily an indication of having active TB. Chest x-rays and sputum smears and cultures are used to test for active TB.

There are several high risk groups in the US that are known to have a high rate of TB. They include:

- The homeless;
- Alcoholics;
- The elderly;
- IV drug users
- Prison inmates
- Persons with HIV infections/AIDS

## Screening:

Upon consent, all new inmates who are processed into jail, without written proof of receiving TB testing in the past year, will receive purified protein derivative (PPD) during the health screening. A nurse will read the PPD forty-eight (48) to seventy-two (72) hours afterwards and document the results in the patient's medical file. The patient will be instructed during the health screening to the necessity of follow-up medical care, the results (both positive or negative) and treatment which may be necessary.

## Treatment:

During the screening, if a patient states he/she is past positive, we will not plant PPD, but will obtain a chest x-ray to see if the tuberculosis is active. When a nurse reads a positive PPD, a chest x-ray will be ordered as per physician protocol. The patient will receive information regarding the test results, symptoms of TB, proposed treatment, and follow-up care, etc.

Should the chest x-ray suggest active TB, the local Health Department, SHP Medical Team Administrator, and SHP corporate office should be notified immediately. Initiating therapy/treatment should begin under the recommendations of the local Health Department and in conjunction with the jail physician. The jail will immediately segregate the patient from general population. All people who have come in contact with the patient will have a skin test. The patient will have restricted movement and visitors in the jail, and will be required to wear a mask at all times during contact with staff and/or other persons, until subsequent tests prove no longer infectious.

All new inmates who are processed into the jail, who are on treatment and deemed not infectious will be housed in general population. If a patient is released from jail during therapy, the local Health Department will be notified and provided with the patient's release location and/or the patient's last known address.

## Consent for Testing/Treatment:

I hereby give my consent for TB testing and/or treatment, if needed. I have read and understand the above information regarding testing and treatment procedures.

Signature: X _____  Date: 3/17/06

Witness: _____  Date: 3/17/06

# MEDICAL STAFF RECEIVING SCREENING FORM

Southern Health Partners, Inc.

| LAST NAME | FIRST NAME | MIDDLE | INTAKE DATE | SCREENING DATE |
|---|---|---|---|---|
| TIME AM/PM Mann, Charles. | | | 3/8/06 | 3/8/06 |

PREVIOUS INCARCERATIONS? **no**

| | SEX **M** | SOCIAL SECURITY NO. 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 | DOB 1/4/82 |

CURRENT INSURANCE COVERAGES?

CURRENTLY UNDER PHYSICIAN'S CARE FOR CHRONIC CONDITION: Dr. Nichols. Family Doctor

**VISUAL / MEDICAL OBSERVATION:** *(Explain all "Yes" Answers)  Circle  Y or N:*

| | YES | NO |
|---|---|---|
| Is inmate unconscious or showing visible signs of illness, injury, bleeding, pain, or other symptoms suggesting the need for immediate emergency medical referral?  If yes: | Y | N |
| Are there any visible signs of fever, jaundice, skin lesions, rash, or infection: cuts, bruises, or minor injuries; needle marks, body vermin?  If yes: Genital Area | Y | N |
| Does the inmate exhibit any signs that suggest the risk of suicide, assault, or abnormal behavior?  If yes: | Y | N |
| Does the inmate appear to be under the influence of, or withdrawing from drugs or alcohol?  If yes: | Y | N |
| Is the inmate's mobility restricted in any way due to deformity, cast, injury, etc.  If yes: | Y | N |

**ASK THE INMATE THESE QUESTIONS:** *(Explain all "Yes" answers)*

| | YES | NO |
|---|---|---|
| Have you had or been treated for:  (circle as appropriate)  asthma, diabetes, epilepsy, heart condition, high blood pressure, mental health problems, seizures, ulcers, or other conditions?  Other: | Y | N |
| Have you taken or are you taking any medication(s) prescribed for you by a physician? Prattville mental  If yes: Dilantin Singular, Zoloft. Depakote. 1000mg  Paxil health | Y | N |
| Are you allergic to any medications, foods, plants, etc.?  If yes: ASA | Y | N |
| Have you fainted or had a head injury within the last 72 hours?  If yes: | Y | N |
| Do you have or have you been exposed to AIDS, hepatitis, TB, VD, or other communicable disease?  If yes: | Y | N |
| Have you been hospitalized by a physician or psychiatrist within the last year?  If yes: Mental, Oct-05 forgot name. | Y | N |
| Have you ever considered or attempted suicide?  If yes: | Y | N |
| Do you have a painful dental condition?  If yes: | Y | N |
| Are you on a specific diet prescribed by a physician?  If yes: | Y | N |
| Do you use drugs? How often? 1-wk.  What kind? Weed  |  Last time? 2 days ago.  How much? 1-Joint | Y | N |
| Do you use alcohol? How often?  What kind? Occasionly  |  Last time?  How much? | Y | N |
| Females: LMP Date:  Are you pregnant, recently delivered or aborted; on birth control pills; having abdominal pain or discharge?  If yes: | Y | N |

**NOTE VITAL SIGNS:**

| Respiration: | Pulse: | Temperature: | Blood Pressure: |
|---|---|---|---|

HAVE ALL CONCERNS FROM OFFICER INTAKE FORM BEEN ADDRESSED WITH INMATE? **Yes**

ARE ALL STATED CHRONIC CONDITIONS NOTED: **Yes.**

PPD IMPLANTED?  **Y OR N**  ARM LOCATION: **R OR L**  IS H&P SCHEDULED FOR 14 DAYS: _____

REMARKS: _____

---

*I have answered all questions truthfully.  I have been told and shown how to obtain medical services and advised on how to obtain medication upon release.  I hereby give my consent for professional services to be provided to me by and through Southern Health Partners, Inc.*

Inmate's Signature: *Charles Mann*  Date: 3/8/06

Interviewer's Signature and Title: A. Horley LPN  Date: 3/8/06



**SOUTHERN HEALTH PARTNERS**

## AUTHORIZATION FOR RELEASE OF MEDICAL INFORMATION TO CORRECTIONAL FACILITY

To: _DR. Nichols._

I hereby authorize any hospital, clinic, physician's office, and/or health agency to provide any information they may have acquired while attending me for a medical, dental, or psychiatric problem to Southern Health Partners, Inc. who is the medical care provider of this Correctional Facility. Such information may include the following items:

Summary of positive findings, most recent history, physical exam including any diagnostic tests;
Medical/dental/psychiatric/psychological diagnosis and treatment regimen when last treated;
Drug or ETOH treatment records;
Hospital discharge summary for any/all hospitalization(s); Laboratory and/or Special Study Reports;
Any other medical/dental/psychiatric services I may have previously had, currently seeking, or future treatment plans;
Other Records: _Medication Records, meds Currently on._

This consent is subject to revocation at any time except to the extent SHP has already taken action in reliance on it. If not previously revoked, this consent will terminate within 120 days of the inmate's signature below.

I understand my records are protected under state and/or federal privacy laws and cannot be disclosed to any other outside party without my written consent unless otherwise provided for by state or federal law. Records received will be kept within the patient's medical file within the correctional medical unit and be used in the on-going provision of health care services.

I release responsibility and/or liability from the correctional facility for the release of the above requested medical file information to the medical unit to the extent indicated and authorized.

**Please send requested documents to the following address:**    ATTN: MEDICAL UNIT/SOUTHERN HEALTH PARTNERS
County Name: _Autauga Metro._
Street Address: _136 North Court St._
City/State/Zip: _Prt, Al 36067._  Phone/Fax: _358-4827._

Patient Name: _Charles, Mann_    Birth Date: _____
Social Security Number: _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_ Dates of Service(s): _____
Inmate's Signature: _Charles mann_    Date: _3/8/06._
Witness: _A. Noble, RN._    Date: _3/8/06._

Final Privacy Rule (page 82540, HIPAA) states while individuals are in a correctional facility or in the lawful custody of a law enforcement official, covered entities (i.e. jail medical units) can use, request or disclose protected health information about these individuals without authorization to the correctional facility having custody as necessary for: the provision of health care to such individuals; for the health and safety of such individuals and other inmates; and the health and safety of the officers of employees of or other as the correctional institution. Covered entities are allowed to disclose protected health information about these individuals if the correctional institution represents that the protected health information is necessary for these purposes.

_Faxed 3/8/06 8:45 am_

```
03/08/06                    AUTAUGA COUNTY METRO JAIL                        562
06:27                       Inmate Medical History:            Page:    1

     Booking Number:   34882    Confined                        Active
     Name Number:      19868    CHARLES MANN JR
  Doctor:                                        Phone: (   )  -
Address:
Sex Prf:       Diet: NO MAYO AND OUINS
           Allergies: N    Respiratory Problems: N    High Blood Pressure: N
     Heart Problems: N           Hemophilia: N           Tuberculosis: N
           Diabetes: N             Pregnant:         Recently Pregnant:
       Birth Control:          Dental Problems: N            Alcoholism: N
   Drug Dependency: N         Kidney Disease: N         Liver Disease: N
           Suicidal: N              Epilepsy: N             Hepatitis: N
               AIDS: N      Venereal Disease: N    Recent Head Injury: N
           Seizures: Y       Traumatic Injury: N      Psychiatric Care: N
                    :                        :                        :
                    :                        :                        :
                    :                        :                        :
                    :                        :                        :
                    :                        :                        :
                    :                        :                        :

History: (See below)
  Notes:
```

= = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = =

```
Yes Explanations:

Alcoholism:changed from ' ' to 'Y' by BOSTICK WILLIAM 15:05:58 03/07/06
Alcoholism:changed from 'Y' to 'N' by BOSTICK WILLIAM 15:06:04 03/07/06
Seizures:changed from ' ' to 'Y' by BOSTICK WILLIAM 15:06:24 03/07/06
HAS SEIZURES ON MEDICATION BUT OUT
```

Southern Health Partners, Inc.

## ADMISSION DATA / HISTORY AND PHYSICAL FORM

Exam Date: 3/17/06   S.S.#: 418 15 8387   ID#: 34882

Inmate Name: Mann, Charles   Date Booked: 3/8/06
(Last) (First) (Middle)

Alias: _____   County: Autauga

Address: 1310 4th Ave N   Clanton, AL
(Street) (City) (State) (Zip)

Telephone: 334 358-7116   Birthdate: 1-4-82   Religion: _____

Education Completed: no   Special Education: no

Marital Status: S M W (D) Separated   Read/Write English: (YES) NO Other: _____

Previous Incarcerations: (Facility/Date) Autauga Co Jail 3 yrs ago

### MEDICAL HISTORY

Notify in Emergency: Charles Whitmore   Father
(Name) (Relationship)

Address: Clanton, AL   Phone: (33) 358 7116
(Street) (City) (State) (Zip)

Health Insurance: Medicaid
(Type of Insurance) (State) (Policy Number)

Family Physician: Dr. Nichols
(Name) (Street Address) (City) (State) (Zip) (Phone Number)

Past Hospitalizations (include surgeries): Cataract surgery O eye

Prattville AL   Baptist south
(Location) (Street Address) (City) (State) (Zip)

Head Injury with Loss of Consciousness: _____   Last Tetanus: ___ 06   Immunization: up to date

Allergies: ASA

Current Medication(s): none

### MENTAL HEALTH EVALUATION

Hospitalization for Mental Health Reasons: (YES) NO   If Yes, Why: Tervetts, Bipolar, ADHD

Where: Brill - Montgomery   When: last year
(Location) (Street Address) (City) (State) (Zip) (Date)

Psychotropic Meds (Specify type and last dose): Zoloft, Depakote, Paxil,

Prior Counseling/Out-Patient Treatment for: Bipolar

Where: Autauga Fountain city Mental Health   When: 9-10 months ago
(Location) (Street Address) (City) (State) (Zip) (Date)

Have you ever attempted suicide: Yes   How: wrist, hang,   When: 1 wk ago
(Date)

Have you recently considered committing suicide? no

Do people consider you a violent person? no

Have you ever been arrested for a violent crime/sexual offense? (Specify) no

Street drugs: Marijuana - Occasionally   Smoker: dip   Etoh: none
(Type Quantity) (How Often) (How Long) (Type) (Date)

Inmate's Signature: _____   Date: 3/17/06

Interviewer's Signature: _____   Date: 3/17/06

Witness: (if physical is refused): _____   Date _____

# EXHIBIT 2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **CHARLES A. MANN** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 2:06-CV-936-MHT** |
| | ) | |
| **SOUTHERN HEALTH PARTNERS** | ) | |
| **SERVICES,** *et al.,* | ) | |
| | ) | |
| **Defendants.** | ) | |

**AFFIDAVIT OF SANDRA CORSON, LPN.**

Before me, the undersigned notary public, in and for said County and State, personally appeared **Sandra Corson, LPN**, who, after first being duly sworn by me, deposes and states as follows:

1.      My name is Sandra Corson, LPN.  I am over the age of 19 years and have personal knowledge of the facts contained herein.

2.      I obtained my LPN degree from George Wallace Community College in Selma, Alabama in 1995.  I was employed as an LPN by Baptist Medical Center and Vaughn Regional Hospital in Selma, Alabama for approximately three years.  I next worked at Baptist Nursing Home in Prattville, Alabama for four years.  From November 2002 through August 2006, I was employed as an LPN at the Dallas County Jail.  Since August 2006, I have been employed by Southern Health Partners, Inc. ("SHP") as an LPN at the Autauga County Jail.

3.      SHP provides medical care to inmates in various jail facilities, including the Autauga County Jail.  Health care services have been provided to inmates by SHP pursuant to a contract

between SHP and the Autauga County Commission. Health care in the jail is provided under the direction of an MTA as well as a medical director. During the period complained of by the plaintiff in this action, Dr. Kenneth Nichols ("Dr. Nichols") was the medical director in the jail and Tina Ellis, LPN was the MTA.

4.      When an inmate in the jail requires routine medical care, he or she obtains an inmate sick call slip from the corrections officer on duty in the housing unit and that form is provided to the medical staff for action. Routine sick calls are conducted by the medical staff inside the housing unit.

5.      As I understand the plaintiff's complaint, the plaintiff alleges that he was sexually assaulted by another inmate from September 7, 2006 to September 13, 2006. It appears that the only claim alleged against Tina Ellis and SHP's medical staff is for failure to treat the injuries he claims he suffered from this alleged assault.

6.      I have reviewed SHP's medical chart on the plaintiff.

7.      On August 22, 2006, the plaintiff was booked into the Autauga County Jail, having transferred from the Chilton County Jail.

8.      On August 18, 2006, while incarcerated at the Chilton County Jail, the plaintiff completed an inmate sick call slip, complaining of a skin infection. On August 19, 2006, the plaintiff was seen by Marlo Oaks, RN, who noted that the plaintiff states he has a skin infection on his inner thigh and was seen by a skin specialist who told him it wasn't a rash but a skin infection and that he was put on medicine that his mother would bring for him. The plaintiff requested hydrocortisone cream to relieve the itching, and several packs were provided to him. The plaintiff also complained of left upper wisdom tooth pain. Nurse Oaks observed no signs or symptoms of

2

abscess and noted that the plaintiff would receive 800 mgs. of ibuprofen pursuant to Dr. Nichols's treatment protocol.

9.    On August 19, 2006, Marlo Oaks, RN also performed a history and physical on the plaintiff. Nurse Oaks recorded that the plaintiff had tried to commit suicide twice in the last month and a half, once by attempting to hang himself and the other by jumping off a building. He denied any current suicidal thoughts. The plaintiff also gave a history of using cocaine twice a week. On physical examination, the plaintiff stated that he had a rash in between his legs, and he was using hydrocortisone cream for it. He complained of left side pain in his upper wisdom tooth, which Dr. Nichols had prescribed ibuprofen to treat.

10.    On August 29, 2006, the plaintiff completed an inmate sick call slip, wherein he complained of having pink eye. On the same day, Tina Ellis saw the plaintiff and noted that the plaintiff's eye was pink, bloodshot and swollen. Thereafter, Dr. Nichols prescribed the plaintiff with Neomycin eye drops and ibuprofen for seven days.

11.    On September 13, 2006, the plaintiff completed an inmate sick call slip, complaining that he had been raped, kicked several times, choked, hit in the back and that his anus was in pain. On September 18, 2006, I saw the plaintiff in response to these complaints. I noted a small knot on the plaintiff's head, which was not consistent with being kicked and found no bruises or indications that the plaintiff had been kicked in the back. I also examined the plaintiff's posterior and anus and found no signs of forcible entry. I saw no bleeding, tears, swelling or redness. I found no physical evidence of rape and saw no signs or symptoms of rape. In fact, I found no evidence of any physical injury suffered by the plaintiff. Pursuant to Dr. Nichols' treatment protocol, the plaintiff was

3

prescribed ibuprofen 800 mg. twice a day for seven days to treat his complaints of pain. The plaintiff never again complained of any problems or pain arising out of his alleged rape and assault.

12.    Prior to receiving the plaintiff's September 13, 2006 inmate sick call slip, I and the medical staff had no notice or knowledge that the plaintiff had complained of being raped and/or assaulted in the jail.

13.    Other than his September 13, 2006 inmate sick call slip, the plaintiff completed no further sick call slips regarding any medical complaints related to his alleged rape and/or assault.

14.    On October 12, 2006, the plaintiff completed an inmate sick call slip, complaining of a sinus infection and an upset stomach. Later that day, Tina Ellis saw the plaintiff and observed that the plaintiff had a swollen face, tenderness around his eyes and nose, runny nose, no fever and a sore throat. In response to these symptoms, Dr. Nichols ordered that the plaintiff receive amoxicillin for 10 days, ibuprofen for three days and nasal spray to use as directed pursuant to Dr. Nichols's treatment protocol.

15.    Based upon my review of the plaintiff's records, my treatment of the plaintiff and my education and training, it is my medical opinion that the plaintiff received appropriate nursing care for his complaints of injury related to his alleged rape and assault.

16.    All necessary care provided to the plaintiff by Tina Ellis and the SHP medical staff was appropriate, timely and within the standard of care.

17.    On no occasion was the plaintiff ever at risk of serious harm, nor was the medical staff ever indifferent to any complaint that he made.

_Sandra Corson LPN_

Sandra Corson, LPN

STATE OF ALABAMA        )
                        )
COUNTY OF Autauga       )

I, the undersigned Notary Public in and for said county in said state, hereby certify that Sandra Corson, LPN, whose name is signed to the foregoing and who is known to me, acknowledged before me that, being fully informed of the contents of said instrument, he executed the same voluntarily on the day the same bears date.

GIVEN UNDER MY HAND and official seal on this the 27 day of November , 2006.

_Rene Baker_

Notary Public
My Commission Expires: 12-8-06

[yr] \\LFSPSQL\CPShare\CPWin\HISTORY\061114_0001\17382.0E

5

# EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

CHARLES A. MANN )
 )
 Plaintiff, )
 )
v. )    CIVIL ACTION NO. 2:06-CV-936-MHT
 )
SOUTHERN HEALTH PARTNERS )
SERVICES, *et al.*, )
 )
 Defendants. )

## AFFIDAVIT OF KENNETH NICHOLS, M.D.

Before me, the undersigned notary public, in and for said County and State, personally

appeared **Kenneth Nichols, M.D.**, who, after first being duly sworn by me, deposes and states as

follows:

1.    My name is Kenneth Nichols, M.D.  I am over the age of 19 years and have personal

knowledge of the facts contained herein.

2.    I obtained my medical degree from UAB in 1982.  From 1982 to 1985, I performed

an internal medicine internship and residency at Baptist Memorial Hospital in Memphis, Tennessee.

From July 1985 to the present, I have been in private practice in internal medicine in Prattville,

Alabama.  I am licensed by the State of Alabama as a medical doctor and have been so since 1985.

Since 1997, I have been the medical director of the Autauga County Jail.  Since November 2005,

I have been employed by Southern Health Partners, Inc. ("SHP") to be the medical director of the

Autauga County Jail.

3.      SHP provides medical care to inmates in various jail facilities, including the Autauga County Jail. Health care services have been provided to inmates by SHP pursuant to a contract between SHP and the Autauga County Commission. Health care in the jail is provided under the direction of an MTA as well as a medical director. During the period complained of by the plaintiff in this action, I was the medical director in the jail and Tina Ellis, LPN ("Nurse Ellis") was the MTA.

4.      When an inmate in the jail requires routine medical care, he or she obtains an inmate sick call slip from the corrections officer on duty in the housing unit and that form is provided to the medical staff for action. Routine sick calls are conducted by the medical staff inside the housing unit.

5.      As I understand the plaintiff's complaint, the plaintiff alleges that he was sexually assaulted by another inmate from September 7, 2006 to September 13, 2006. It appears that the only claim alleged against Nurse Ellis and SHP's medical staff is for failure to treat the injuries the plaintiff claims he suffered from this alleged assault.

6.      I have reviewed SHP's entire medical chart on the plaintiff.

7.      On August 22, 2006, the plaintiff was booked into the Autauga County Jail, having transferred from the Chilton County Jail.

8.      On August 18, 2006, while incarcerated at the Chilton County Jail, the plaintiff completed an inmate sick call slip, complaining of a skin infection. On August 19, 2006, the plaintiff was seen by Marlo Oaks, RN, who noted that the plaintiff states he has a skin infection on his inner thigh and was seen by a skin specialist who told him it wasn't a rash but a skin infection and that he was put on medicine that his mother would bring for him. The plaintiff requested hydrocortisone cream to relieve the itching, and several packs were provided to him. The plaintiff also complained of left upper wisdom tooth pain. Nurse Oaks observed no signs or symptoms of

abscess and noted that the plaintiff would receive 800 mgs. of ibuprofen pursuant to my treatment protocol.

9.      On August 19, 2006, Marlo Oaks, RN also performed a history and physical on the plaintiff. Nurse Oaks recorded that the plaintiff had tried to commit suicide twice in the last month and a half, once by attempting to hang himself and the other by jumping off a building. He denied any current suicidal thoughts. The plaintiff also gave a history of using cocaine twice a week. On physical examination, the plaintiff stated that he had a rash in between his legs, and he was using hydrocortisone cream for it. He complained of left side pain in his upper wisdom tooth, which I prescribed ibuprofen to treat.

10.     On August 29, 2006, the plaintiff completed an inmate sick call slip, wherein he complained of having pink eye. On the same day, Nurse Ellis saw the plaintiff and noted that the plaintiff's eye was pink, bloodshot and swollen. Thereafter, I prescribed the plaintiff with Neomycin eye drops and ibuprofen for seven days.

11.     On September 13, 2006, the plaintiff completed an inmate sick call slip, complaining that he had been raped, kicked several times, choked, hit in the back and that his anus was in pain. On September 18, 2006, the plaintiff was seen by Sandra Corson, LPN in response to these complaints. Nurse Corson noted a small knot on the plaintiff's head, which was not consistent with being kicked and she found no bruises or indications that the plaintiff had been kicked in the back. She also examined the plaintiff's posterior and anus and found no signs of forcible entry. She saw no bleeding, tears, swelling or redness. Nurse Corson found no physical evidence of rape and saw no signs or symptoms of rape. Based on Nurse Corson's note, she found no evidence of any physical injury suffered by the plaintiff. Pursuant to my treatment protocol, the plaintiff was prescribed

ibuprofen 800 mg. twice a day for seven days to treat the plaintiff's complaints of pain. The plaintiff never again complained of any problems or pain arising out of his alleged rape and assault.

13.    Prior to receiving the plaintiff's September 13, 2006 inmate sick call slip, the medical staff had no notice or knowledge that the plaintiff had complained of being raped and/or assaulted in the jail.

14.    Other than his September 13, 2006 inmate sick call slip, the plaintiff completed no further sick call slips regarding any medical complaints related to his alleged rape and/or assault.

15.    On October 12, 2006, the plaintiff completed an inmate sick call slip, complaining of a sinus infection and an upset stomach. Later that day, Nurse Ellis saw the plaintiff and observed that the plaintiff had a swollen face, tenderness around his eyes and nose, runny nose, no fever and a sore throat. In response to these symptoms, I ordered that the plaintiff receive amoxicillin for 10 days, ibuprofen for three days and nasal spray to use as directed pursuant to my treatment protocol.

16.    Based upon my review of the plaintiff's records and my education, training and experience, it is my medical opinion that the plaintiff received appropriate medical care for his complaints of injury related to his alleged rape and assault.

17.    All necessary care provided to the plaintiff by Nurse Ellis and the SHP medical staff was appropriate, timely and within the standard of care.

18.    On no occasion was the plaintiff ever at risk of serious harm, nor was the medical staff ever indifferent to any complaint that he made.

_Kenneth Nichols, M.D._
Kenneth Nichols, M.D.

STATE OF ALABAMA                    )
                                   )
COUNTY OF _Autauga_                )

    I, the undersigned Notary Public in and for said county in said state, hereby certify that Kenneth Nichols, M.D. whose name is signed to the foregoing and who is known to me, acknowledged before me that, being fully informed of the contents of said instrument, he executed the same voluntarily on the day the same bears date.

    GIVEN UNDER MY HAND and official seal on this the _27_ day of _November_, 2006.

_Robyn N. Jay_
Notary Public
My Commission Expires: _12-3-2007_